| | |
|---|---|
| RAYISA RADOVSKA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:18-cv-02578 CKD<br><br>ORDER &<br><br>FINDINGS AND RECOMMENDATIONS |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the undersigned Magistrate Judge will recommend that plaintiff's motion for summary judgment's be granted and the Commissioner's cross-motion for summary judgment be denied.

BACKGROUND

Plaintiff, born in 1962, applied on March 24, 2015 for SSI, alleging disability beginning April 2, 2014. Administrative Transcript ("AT") 16, 249. Plaintiff alleged she was unable to work due to back pain with history of spine trauma fracture, degenerative disc disease, depression, insomnia, anxiety, headaches, chest pains, and right hand numbness. AT 110-111. In

a decision dated September 8, 2017, the ALJ determined that plaintiff was not disabled.[1] AT 16-23. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since March 24, 2015, the application date.
>
> 2. The claimant has the following severe impairments: migraine, depressive disorder and posttraumatic stress disorder.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot work at heights or

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> around moving machinery, cannot climb ladders, ropes or scaffolds, can understand, remember and carry out detailed and simple job tasks and instructions and interact appropriately with others.
>
> 5. The claimant is capable of performing past relevant work as a home attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since March 24, 2015, the date the application was filed.

AT 18-23.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) The residual functional capacity is not supported by substantial evidence; (2) The ALJ improperly discounted plaintiff's subjective symptom testimony; and (3) the ALJ improperly discounted third-party lay witness testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not

affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Before turning to plaintiff's claims, the undersigned notes the following background facts:

Plaintiff came to the United States in 2004, after working for nine years as a bookkeeper and cashier for a construction company in the Ukraine. AT 97-98, 244. In 2008, a California State administrative law judge found plaintiff disabled as of September 2007, based on chronic headaches and ongoing depression, and eligible for the Cash Assistance Program for Immigrants (CAPI). AT 343-353.

At plaintiff's June 2017 hearing on her disability application, she testified that she suffered a stroke "eight years ago," or 2009. AT 98. In December 2010, treating physician Dr. Susan Andrews filled out a medical certification form for plaintiff's naturalization application, stating that plaintiff had "posttraumatic stress disorder and traumatic brain injury after a stroke in 2006."[2] AT 576-577. Based on this certification, plaintiff obtained an exception to the English and civics testing requirements for naturalization "because of physical or developmental disability or mental impairment." AT 575-579. Plaintiff became a naturalized citizen in 2011. AT 244.

Beginning that year, plaintiff worked as an in-home caregiver and took care of her father until his death in April 2014. AT 98, 270-271.

A. Credibility

Plaintiff asserts that the ALJ improperly discounted her subjective symptom allegations. Specifically, the ALJ discounted plaintiff's allegations of "functionally limiting headaches" and "impaired psychological functioning." AT 22.

---

[2] Plaintiff's brief asserts the stroke occurred in 2007. (ECF No. 13 at 2, 4.)

4

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

At the June 2017 hearing, plaintiff testified that she got two or three hours of sleep a night and suffered daily headaches. AT 99. She testified that medication helped with the severity of

her headaches, which were brought on by noise and worry and were "there all the time." AT 99-100. Plaintiff testified that she had to lie down multiple times a day, every day, due to her headaches. AT 100-101. Plaintiff further testified that medication helped with her depression, but that she still got upset "frequently" and had weekly panic attacks that lasted up to six hours. AT 103. Plaintiff also testified that she had problems with memory and concentration, such as forgetting where she put things in the house. AT 105-106; see AT 22 (ALJ's summary of plaintiff's subjective symptoms, including "constant headaches, anxiety, depression . . . [and] difficulty remembering, completing tasks, concentrating, following instructions, managing stress, and adapting to changes in routine.").

As to plaintiff's headaches, the ALJ wrote:

> The medical evidence does not support the claimant's allegations of functionally limiting headaches. For example, emergency room records were negative for dizziness and double vision, although the claimant endorsed photophobia.[3] Subsequent medical records also showed that the claimant denied loss of consciousness, memory loss and nausea.[4] There is no evidence of headaches occurring at a frequency or severity to prevent work activities. She has not sought frequent emergency or urgent care for headaches and there is no mention that she presents to her doctor appointments impaired due to headaches. Thus, the undersigned finds that a limitation to avoid heights, dangerous machinery, and climbing would accommodate any intermittent headache.

AT 22.

During the relevant period between April 2014 and September 2017, plaintiff presented to medical providers with headaches in April 2014, where she was prescribed Motrin and reported her symptoms as improved one week later. AT 372-374, 410. In November 2014, she presented with worsening daily headaches "aggravated by anxiety and bright lights. Relieving factors include darkness. Associated symptoms include nausea, neck stiffness and photophobia."

---

[3] Citing AT 373-374 (April 2014 emergency room note diagnosing plaintiff with migraine one week after her father's funeral; exam showed photophobia but no double vision or dizziness).

[4] Citing AT 435 (February 2015 medical note stating that plaintiff had had recurring headaches for five years; symptoms were relieved by over-the-counter medication; and plaintiff did not report symptoms like loss of consciousness, memory loss, or nausea).

Plaintiff's physical and mental exams were normal. AT 426-427. In February 2015, plaintiff complained of recurring headaches of moderate severity, "symptoms . . . relieved by OTC meds." AT 431. A March 2015 CT scan of plaintiff's brain was unremarkable. AT 502-503. In subsequent medical visits, plaintiff did not present with headaches, though headaches were noted as a chronic problem. AT 494-499, 548-554, 559-561, 564-568.

As to plaintiff's mental symptoms, the ALJ wrote:

> Similarly, the medical evidence does not support the claimant's allegations of impaired psychological functioning. For example, mental status examination notes reveal that the claimant was oriented to all spheres, demonstrated sufficient fund of knowledge and denied mood swings, obsessive thoughts and paranoia. Physician's notes also indicated that the claimant did not exhibit flight of ideas or pressured speech and exhibited normal judgment, attention, and concentration.[5] The claimant also denied personality changes and sleep walking.[6] Mental health records revealed that the claimant was stable.[7] During the consultative examination, the claimant stated that she did not have anxiety symptoms that would warrant a diagnosis.[8] Recent medical records revealed that the claimant denied anxiety, depression, insomnia, and anhedonia.
>
> Additionally, the claimant registered a global assessment of functioning (GAF) sore of 51-60 . . . [indicating] merely moderate symptoms[.][9]

AT 22-23.

As to plaintiff's alleged mental impairments, the ALJ cited a November 25, 2014 medical exam in which she was found to have normal orientation, judgment, attention span, concentration,

---

[5] Citing AT 426-427.

[6] Citing AT 426.

[7] Citing AT 460 (April 2015 progress note stating that plaintiff was "overall doing well" and "stable").

[8] Citing AT 514.

[9] Citing AT 447. GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers).

7

memory loss, and fund of knowledge. AT 427. Plaintiff denied personality changes and sleepwalking, as the ALJ noted. AT 426. The November 25, 2014 report also states that plaintiff was "experiencing depression [and] difficulty concentrating," a note apparently based on subjective statements but consistent with her claim of psychological impairment. The ALJ next cited a June 2015 comprehensive psychiatric evaluation in which plaintiff reported depression but denied any significant anxiety. AT 514. The examiner's mental status exam assessed plaintiff's mood as depressed; however, her thought process, thought content, cognition, orientation, concentration, attention span, insight, and judgment were normal. AT 516-517.

As to plaintiff's subjective symptoms of headaches and psychological impairment, the ALJ continued:

> Moreover, the claimant has been prescribed and taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. Specifically, mental health records revealed that the claimant's mood had improved with medication.[10] Additional records revealed that the claimant was doing well overall.[11]

After the above discussion, the ALJ concluded that "the medical evidence does not support the claimant's allegations or allegations of supporting third parties." AT 23. As the cited records show that plaintiff's headaches were reasonably controlled with over-the-counter medication, that she had numerous normal mental status findings, and that her depression had improved on medication, the undersigned finds no error in the ALJ's determination that plaintiff's allegedly debilitating symptoms were less than fully credible.

////

////

---

[10] Citing AT 537 (February 2017 note that plaintiff's mood was "less depressed" and had improved with medication).

[11] Citing AT 545 (April 2015 note that plaintiff was "stable" and "overall doing well"); see also AT 480 (September 2015 note that plaintiff said medication helped with depression and she was "emotionally coping" with bereavement); AT 542 (November 2015 notes that plaintiff's mood was "ok" and she was "doing well on meds" for depression and PTSD).

B. <u>Lay Witness Testimony</u>

Plaintiff claims that the ALJ improperly discounted the lay witness testimony of her adult son, Artur Radovsky, who completed a third party function report in May 2015. AT 281-288. Radovsky stated that plaintiff complained of "constant debilitating headaches that prevent her from functioning mentally" and was "depressed and anxious." AT 281. He reported that she lacked motivation due to her depression, forgot things easily, and had difficulty with spoken instructions, though she could follow written instructions. AT 281-286. Mr. Radovsky indicated that plaintiff's impairments affected numerous physical and mental abilities, including memory, completing tasks, and concentration. AT 286; <u>see</u> AT 22 (ALJ's summary of third party function report).

The ALJ weighed the report as follows: "Mr. Radovsky's lay opinion cannot be afforded significant weight because it, like the claimant's, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." AT 22; <u>see also</u> AT 23.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996); <u>see also</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." <u>Dodrill</u>, 12 F.3d at 919.

Here, the ALJ found Mr. Radovsky's testimony less than fully credible for the same reasons he found plaintiff's testimony less than credible. Like plaintiff, Mr. Radovsky described multiple debilitating physical and mental symptoms, a portrait the ALJ found inconsistent with medical evidence of improved mental symptoms on medication and little evidence of disabling physical impairments other than migraines. <u>See</u> AT 18-19, 22-23. These reasons – discussed as to plaintiff's credibility and referenced in connection with Mr. Radovsky's similar testimony – were sufficient to discount Mr. Radovsky's credibility. <u>See</u> <u>Valentine v. Comm'r</u>, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provided sufficient reasons for rejecting claimant's own

9

testimony, "it follows that the ALJ also gave germane reasons for rejecting" similar testimony of lay witness). The undersigned finds no error on this basis.

   C.   Residual Functional Capacity

Plaintiff asserts that the RFC does not account for her headaches and psychological impairments, and is not supported by substantial evidence.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, plaintiff's RFC included no physical limitations and the following non-exertional limitations: "the claimant cannot work at heights or around moving machinery; cannot climb ladders, ropes or scaffolds; can understand, remember and carry out detailed and simple job tasks and instructions and interact appropriately with others." AT 20. Thus the only mental functional limitation was to preclude plaintiff from complex tasks. See AT 108 (ALJ's hypothetical question to vocational expert included limitation on complex tasks, but assumed claimant "could maintain concentration, persistence, and pace for simple and detailed job instructions" and "could interact with supervisors, coworkers, and the public.").

Plaintiff first argues that this RFC is inconsistent with her 2007 stroke and the 2008 state decision that plaintiff was eligible for CAPI benefits due to chronic headaches and depression. However, the alleged onset disability date in this matter was April 2, 2014, such that the 2008 state assessment has little relevance. As for plaintiff's stroke, the ALJ found that "the medical record does not evidence any significant treatment for this impairment. Such absence of

diagnostic findings or continuing treatment, suggests that this impairment does not cause any functional limitations in the claimant's ability to perform work and thus, is nonsevere." AT 19. Rather than speculating about the extent to which plaintiff's problems may have been caused by a stroke seven years before the alleged onset date, the undersigned focuses on the record during the alleged period of disability.

The most notable issue with the RFC is that it does not include any mental limitations except a preclusion from complex tasks. Earlier in the decision, the ALJ found plaintiff to have the severe impairments of depressive disorder and posttraumatic stress disorder, along with migraines (discussed below). AT 18. Factoring in plaintiff's daily activities and the opinion of psychiatric consultative examiner Dr. Ryan Gunton, the ALJ concluded that

> the claimant has (1) moderate limitations in her ability to understand, remember, or apply information; (2) mild limitation in her ability to interact with others; (3) moderate limitation in her ability to concentrate, persist, or maintain pace and (4) mild limitation in her ability to adapt or manage oneself.

AT 19-20; see also AT 21 ("Consultative psychologist, Ryan Gunton, Ph.D. opined that the claimant had mild to moderate limitations in her ability to maintain regular attendance, complete a normal workday/workweek and handle normal work-related stress.[12] Dr. Gunton's opinion is persuasive because it is consistent with the examination findings and the medical evidence as a whole.").

The ALJ gave Dr. Gunton's opinion significant weight, crediting portions of the opinions of two state agency consultants because their opined restrictions "were consistent with the findings of Dr. Gunton" and rejecting the portions of those opinions that diverged from Dr. Gunton's report.[13] AT 21. However, the RFC does not include limitations opined by Dr. Gunton. At his June 2015 comprehensive psychiatric evaluation of plaintiff, Dr. Gunton concluded in part:

> With ability to maintain regular attendance in the workplace the claimant is mild to moderately limited due to a depressed mood that

---

[12] Citing AT 514-519.

[13] The ALJ also rejected the opinions of treating physician Dr. Rappaport and former treating physician Dr. Anderson, who opined that plaintiff had problems with concentration, attention span, memory, and cognitive functioning. AT 21.

11

> causes her to isolate.
>
> With ability to complete a normal workday or workweek and staying consistent with adequate pace and productivity without interruptions from a psychiatric condition the claimant is mild to moderately limited due to a depressed mood that causes her to become overwhelmed lack motivation and isolate.
>
> With ability to handle normal work related stress from a competitive work environment the claimant mild to moderately limited due to a depressed mood that causes her to become overwhelmed lack motivation and isolate.

AT 517. Dr. Gunton further opined that plaintiff's "mental health symptoms may be chronic in nature" and "are likely to significantly impact her social or occupational functioning." AT 517. Dr. Gunton concluded that plaintiff's prognosis was fair "with continued mental health and supportive services." AT 517.

Though the ALJ marshalled evidence that plaintiff's mental health symptoms had improved with treatment, discussed above, his decision did not give specific and legitimate reasons for discounting the mental limitations opined by Dr. Gunton and reflected, to some degree, throughout the record, even if plaintiff's and her son's statements were not afforded full credibility. For example, the ALJ cited plaintiff's GAF score of 51-60, which indicates moderate mental symptoms or some difficulty in social, occupational, or school functioning. AT 23. Yet this assessment is neither discounted for any reason, nor reflected in the RFC.

The ALJ's decision does not sufficiently explain the absence of mental limitations in the RFC, given plaintiff's severe impairments of PTSD and depression and her history of both self-reported and medically-determined mental impairment. See Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." 775 F.3d at 1103 (internal citation omitted)." Where "the agency's path cannot be reasonably discerned," reversal of an ALJ's determination is warranted. Id. (internal citation omitted).

Similarly, it is not clear how the RFC addresses plaintiff's severe impairment of migraines by precluding working at heights or around moving machinery, and climbing ladders, ropes, or

scaffolds. Plaintiff's migraine symptoms did not include dizziness, double vision, or loss of consciousness, such as might relate to these restrictions. See AT 373-374, 435. Rather, as noted above, her chronic headaches were "aggravated by anxiety and bright lights" and relieved by darkness and over-the-counter medication. If her subjective testimony is credited to any extent, they were also relieved by lying down. At the least, the ALJ must explain how a functional limitation relates to the impairment it is meant to address, if the relationship is not obvious.

For the foregoing reasons, the undersigned concludes that the RFC is not supported by substantial evidence, constituting reversible error.

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether plaintiff was disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC.

13

The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand.  The court also does not instruct the ALJ to credit any particular opinion or testimony.  The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

Thus, the undersigned recommends that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

IT IS HEREBY ORDERED that the Clerk of Court shall assign a district judge to this action.

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) be granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) be denied;

3. This matter be remanded for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 13, 2020

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/radovska2578..ssi.ckd_f&rs